**UNITED STATES, Appellee**

v.

**Ali Hamza Ahmad Suliman AL BAHLUL, Appellant.**

**CMCR Case No. 09–001.**

United States Court of Military Commission Review.

Jan. 24, 2011.

1116

Before B. BRAND, D. CONN, T. GALLAGHER, J. HOFFMAN, J. PERLAK, E. PRICE, and M. SIMS.[1]

APPELLANT'S MOTION TO DISQUALIFY AND EN BANC CONSIDERATION

DANIEL E. O'TOOLE, Chief Judge.

On September 16, 2010, the Court received Appellant's motion to disqualify Judge O'Toole and Judge Thompson from

**1.** Judges D. O'Toole and C. Thompson took no part in the decisions in this Order, having recused from further participation in this case.

sitting as appellate judges in the case of *United States v. al Bahlul.* Judge O'Toole[2] and Judge Thompson subsequently recused from further participation in this case.

ORDERED, the motion is DENIED as moot.

Upon *sua sponte* motion to reconsider the case of *United States v. al Bahlul en banc,* and upon the motion having passed by unanimous vote of all judges eligible to participate, it is

ORDERED, that the case of *United States v. al Bahlul* shall be considered by the court sitting *en banc.*

## MEMORANDUM OF RECUSAL

Jan. 21, 2011.

On September 16, 2010, Appellant filed a motion seeking to disqualify Acting Chief Judge Daniel E. O'Toole from participating in this appeal because he is not presently serving on his Service Court of Criminal Appeals as Appellant asserts is required by the Military Commissions Act of 2009, and the Regulation for Trial by Military Commissions.

For the reasons set forth *infra,* I recuse from consideration of the motion to disqualify, and from participation in the review of this case on appeal.

**Introduction**

Motions to disqualify or to recuse a judge are ordinarily referred to that judge for resolution. Rules of Practice for the USCMCR, Rule 24. The instant motion, however, does not allege a lack of impartiality or bias, rather it asserts I am no longer a judge of my Service Court of Criminal Appeals (CCAs), and that I am,

**2.** Judge O'Toole's Memorandum of Recusal is attached to this Order.

therefore, disqualified from continued service as a judge in this case. That is a wholly different category of challenge than is anticipated by the Rules of Practice for referral to the judge at issue. The precedent for this Court in such a circumstance is for that judge to recuse from consideration of his own legitimacy. *United States v. Khadr*, 717 F.Supp.2d 1212 (U.S.C.M.C.R.2007). I find that precedent to be both persuasive and prudent. I, therefore, recuse from the consideration of the pending Motion to Disqualify.

Before moving to address my continuing role in the review of this case on appeal, I pause to inform the record to make clear the basis for my recusal.[1]

### Assignments from 2007 to present

On May 8, 2007, I was assigned to the Court of Military Commission Review (CMCR) as an appellate military judge pursuant to the Military Commission Act of 2006 (2006 MCA). At the time I took the oath of appointment to the CMCR on August 1, 2007, I was simultaneously serving as an appellate military judge on the Navy–Marine Corps Court of Criminal Appeals (NMCCA). In April 2008, I became Chief Judge of the NMCCA. The following July 2009, I was selected to be the first Chief Judge of the Department of the Navy (CJDON). On September 1, 2009, the Judge Advocate General of the Navy (JAG) signed a superseding appointment directing me to assume the duties of CJDON. Thereafter, the Deputy Secretary of Defense, acting for the Secretary, approved my assignment as Deputy Chief Judge of the USCMCR, effective December 31, 2009. Appendix A. Chief Judge Williams then resigned from the USCMCR, and I became Acting Chief Judge.

### Chief Judge of the Department of the Navy

The departmental responsibilities of the Chief Judge of the Department of the Navy (CJDON) are outlined in JAG Notice 5450, Mission and Function of Assistant Judge Advocate General, Chief Judge of Department of the Navy, dated May 24, 2010.[2] Appendix B. The CJDON reports directly to the Navy JAG, as the senior supervisory jurist in the department, and the reporting senior for the judges of the NMCCA, and the Chief Judge, Navy–Marine Corps Trial Judiciary. To comply with Article 66 of the Uniform Code of Military Justice, which precludes "members" of a Service CCA from serving as reporting senior (or rating officer) of other CCA members, the CJDON is not assigned as an appellate military judge on the NMCCA. The CJDON remains available to be detailed as presiding judge of general courts-martial, or assigned as Chief Judge of the NMCCA at the discretion of the Navy JAG, and is explicitly bound by the American Bar Association 2007 Code of Judicial Conduct. JAG Notice 5450.

The new position of CJDON is unique among the Services. It requires a competitive flag board selection, because it anticipates designation in the third year of service as Assistant Judge Advocate General of the Navy (AJAG) for a minimum period of 12 months. 10 U.S.C. § 5149(b). Similar to the Commander of the U.S. Army Legal Services Agency (USALSA), who traditionally has also served as the Chief Judge of the Army Court of Criminal Appeals, JAG Notice 5450 describes the dual role of the CJDON as the AJAG. Briefly stated, the AJAG is a leadership position

---

1. Though the reasons for recusal are typically not disclosed, due to the unique circumstances of this case, as further described infra, I find it appropriate to do so.

2. JAG Notice 5450 is available at www.jag.navy.mil/library/notices/5450.pdf.

within the Department of the Navy and in the Navy JAG Corps community. The role of CJDON is a judicial role, including direct oversight of the NMCCA. When performing duties that are not judicial in nature, those duties are discharged with the approval of the Navy JAG.

JAG Notice 5450 provides that the CJDON may not serve as the reporting senior for any judge with whom such duty constitutes a judicial encumbrance or conflict. As the regulation specifically anticipates service by the CJDON on the USCMCR, it prohibits reporting on any USCMCR judges with whom CJDON would serve. In such event, the Navy JAG remains the reporting senior of those judges.

### Assignment to the USCMCR

Appellant does not challenge my qualifications at the time of my initial assignment to the CMCR in 2007. As previously noted, at that time, I was an appellate military judge on my Service's CCA, and I met all statutory qualifications for assignment to the CMCR. Thereafter, on December 2, 2009, then Chief Judge Williams recommended that I be appointed Deputy Chief Judge of the renamed U.S. Court of Military Commission Review (USCMCR). Appendix A, TAB A. This nomination specifically anticipated that Chief Judge Williams would leave the Court and that the Deputy Chief Judge would succeed him as Acting Chief Judge, until a permanent successor was named. Chief Judge Williams' nomination letter specifically noted that the Secretary of the Navy had approved the competitive board results of my selection as the AJAG and CJDON. The memorandum relating my nomination to the Deputy Secretary of Defense included my biography, which also indicated selection as CJDON and the associated change in my status. Appendix A, TAB B. On December 21, 2009, the Deputy Secretary of Defense, acting for the Secretary, approved my additional assignment as Deputy Chief Judge of the USCMCR effective December 31, 2009. Appendix A. Chief Judge Williams then resigned, and I have since served as the Acting Chief Judge.

### 2006 Military Commissions Act (2006 MCA)

Appellant's challenge pertains to my change in status on September 1, 2009, upon designation as Chief Judge, Department of the Navy. On that date, the governing statute was the 2006 MCA under which I was assigned, not the 2009 MCA, which had yet to be enacted.

Two provisions of the 2006 MCA address establishment of the CMCR and assignment of CMCR appellate judges. Subsections 950f(a) and (b) of the MCA provide:

(a) *Establishment.*—The Secretary of Defense shall establish a Court of Military Commission Review which shall be composed of one or more panels, and each such panel shall be composed of not less than three appellate military judges. For the purpose of reviewing military commission decisions under this chapter, the court may sit in panels or as a whole in accordance with rules prescribed by the Secretary.

(b) *Appellate Military Judges.*—The Secretary shall assign appellate military judges to a Court of Military Commission Review. Each appellate military judge shall meet the qualifications for military judges prescribed by section 948j(b) of this title or shall be a civilian with comparable qualifications. No person may serve as an appellate military judge in any case in which that person acted as a military judge, counsel, or reviewing official.

Under these statutory provisions, the CMCR, once established, must be "composed of one or more panels of not less

than three appellate military judges." The term "appellate military judges" in this context refers not to a Service CCA judge, but to those judges assigned to and sitting on panels of the CMCR. This construction is supported by the immediately following use of the term. The Secretary is directed to assign "appellate military judges," each of which shall meet the qualifications for a "military judge," or "be a civilian with comparable qualifications." The term "appellate military judges" refers to the judges assigned to and sitting on panels of the CMCR, and it includes both military and civilian judges.[3] There is no requirement in these provisions for simultaneous CCA service. The statute does, however, provide for several post-assignment disqualifying circumstances. These include conflicts potentially encountered in specific cases (having served as military judge, counsel or reviewing authority). These do not include the circumstance in which a military judge is not, or is no longer, assigned to a Service CCA. Provided none of the disqualifying circumstances are present in a particular case, the qualifications that must be met by military judges are incorporated by reference from 2006 MCA § 948j (b), and include the following:

(b) *Qualifications.*—A military judge shall be a commissioned officer of the armed forces who is a member of the bar of a Federal court, or a member of the bar of the highest court of a State, and who is certified to be qualified for

duty under section 826 of this title (article 26 of the Uniform Code of Military Justice) as a military judge in general courts-martial by the Judge Advocate General of the armed force of which such military judge is a member.

These qualifications do not include a requirement that a judge of the CMCR simultaneously serve on a Service CCA, or continue to so serve after assignment to the CMCR. Since I have, at all times, continued to meet all of the enumerated statutory qualifications, and do not have a disqualification related to any case presently pending adjudication before the Court, it follows that designation as CJDON, resulted in no statutory disqualification of my preceding CMCR assignment under the 2006 MCA.[4]

### Regulations

On January 18, 2007, the Secretary of Defense approved the Manual for Military Commissions (MMC), including Rule for Military Commissions (R.M.C.) 1201(b)(1). That rule reiterates the statutory qualifications of the 2006 MCA, and requires each Judge Advocate General to nominate four appellate military judges meeting those statutory qualifications. The use of the term "appellate military judges" follows the statutory usage, and so should be read as identifying the position on the CMCR for which the nominee is intended, rather than the position in which a nominee is presently serving.

---

3. The April 27, 2010, version of the *Manual for Military Commissions (MMC)* defines "appellate military judge" more narrowly, limiting this term to commissioned officers of the armed forces who are appellate judges. R.M.C. 103(a)(2). *See also* R.M.C. 1201(b)(5) (composition of USCMCR panels).

4. The 2009 MCA became effective on October 28, 2009, including a specific provision for the continuation of appellate military judges initially assigned under the 2006 MCA. Act Oct. 28, 2009, P.L. 111–84, Div A, Title XVIII,

§ 1804, 123 Stat. 2612, provides that any appellate military judge or other duly appointed appellate judge on the Court of Military Commission Review pursuant to chapter 47A of title 10, United States Code [10 USCS §§ 948a et seq.] (as in effect on the day before the date of the enactment of this Act), shall be deemed to have been detailed or appointed to the United States Court of Military Commission Review pursuant to chapter 47A of title 10, United States Code [10 USCS §§ 948a et seq.] (as so amended).

As the Appellant correctly points out, however, the Regulation for Trial by Military Commission (RTMC), promulgated by the Secretary of Defense on April 27, 2007, addresses a number of matters, including establishment of the CMCR, qualifications of military appellate judges, the composition of the Court, and the nominating process. RTMC ¶ ¶ 25–2a and b track, and in part quote, the 2006 MCA provisions for the establishment and qualifications of judges.[5] It is RTMC ¶ 25–2c that first references the composition of the CMCR as composed of CCA judges.

> 25–2c. *Appellate military judges.* The CMCR will consist of judge advocates who are currently certified and detailed as appellate military judges of the services' Courts of Criminal Appeals (CCAs), or civilians of comparable qualifications. Each Judge Advocate General will nominate four appellate military judges for duty as appellate judges on the CMCR. Appellate military judges serving on the CCAs will serve as appellate judges on the CMCR as long as their tour of duty continues with their respective service Court of Criminal Appeals. When a military judge serving on a CCA is reassigned from the CCA, the service Judge Advocate General will nominate a replacement appellate military judge for duty as an appellate judge on the CMCR. The Secretary of Defense shall appoint military judges to the CMCR from among appellate military judges nominated by each Judge

Advocate General and from civilians of comparable qualifications designated by the Secretary.

While the composition of the court is described as including current Service CCA judges, the regulation does not include such service on a CCA as one of the enumerated qualifications. *See* ¶ 25–2b. All qualifications are reiterated from the 2006 MCA and R.M.C. 1201(b)(1). The question then becomes whether a judge, fully qualified and properly assigned to the CMCR under the 2006 MCA and the R.M.C.s promulgated by the Deputy Secretary of Defense, but then assigned to judicial duties other than as a Service CCA judge, has become ineligible to continue to serve as a member of the Court without further action by the Secretary. The regulations do not describe how the Court's composition and nomination procedures relate to the enumerated qualifications, in general, or specifically to the continuing qualification of a CMCR judge; neither is the reference to the composition of the Court explicitly identified as a self-executing disqualification of a fully qualified and properly assigned judge of the CMCR. Ultimately, the answer to the question posed is not explicitly addressed by the current regulations. However, we need not speculate on the position of the Deputy Secretary of Defense. After being notified of my selection as Assistant Judge Advocate General and assumption of duty as Chief Judge of the Department of the

**5. 25–2. ESTABLISHING THE CMCR**

a. *Establishing the court.* The Secretary of Defense shall establish a Court of Military Commission Review (CMCR). The Court shall be composed of one or more panels and each such panel shall be composed of not less than three appellate military judges (see R.M.C. 1201).

b. *Qualifications.* In accordance with 10 U.S.C. § 948j(b), a military appellate judge "shall be a commissioned officer of the armed forces who is a member of the bar of a

Federal court, or a member of the bar of the highest court of a State, and who is certified to be qualified for duty under section 826 of this title. (article 26 of the Uniform Code of Military Justice) as a military judge in general courts-martial by the Judge Advocate General of the armed force of which such military judge is a member" or a civilian with comparable qualifications. No person may serve as an appellate military judge in any case in which that person acted as a military judge, counsel or reviewing officer, in that case.

Navy, the Deputy Secretary assigned me additional duties on the USCMCR as the Deputy Chief Judge. *Cf. Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945) (agency's interpretation of own regulation accorded substantial deference and courts will reject only if agency interpretation violates the Constitution, a statute, or is "plainly erroneous or inconsistent with the regulation.") (1945).[6]

### Structural Protection for the Independence of the UCMCR Judges

The Appellant buttresses his argument for disqualification by expressing concern that a USCMCR judge who is not simultaneously a Service CCA judge represents a breach of judicial independence. The structural protections that Appellant contends are at risk are, in fact, preserved in the regulatory structure for the Chief Judge of the Department of the Navy. The CJDON is qualified, certified and available to be detailed to preside over general courts-martial and military commissions, and in all matters is required by the 2007 Model Code of Judicial Conduct to remain impartial and independent. JAG Notice 5450. The CJDON is the senior supervisory jurist of the department, meeting the requirements of Article 26(c) of the Uniform Code of Military Justice to be "assigned and directly responsible to the Judge Advocate General, or his designee, of the [respective] armed force ... perform[ing] duties of a judicial or nonjudicial

nature other than those relating to his primary duty as a military judge of a general court-martial when such duties are assigned to him by or with the approval of that Judge Advocate General, or his designee." The 2009 MCA further protects the CJDON, as a judge of the USCMCR, from unlawful influence. 10 U.S.C. § 949b(b).

Thus, I remain within the statutory and regulatory protections for military judges, and I am explicitly charged with remaining impartial and ensuring judicial independence. The judges with whom I serve on the USCMCR are also protected by JAG Notice 5450, which provides that, in any case in which I, as CJDON, would be in conflict with any other judge for whom I serve as reporting senior, the JAG serves as reporting senior. As a result, I do not now serve, and have never served, as the reporting senior for any judge on the USCMCR. Additionally, while there are a range of administrative duties associated with my current position, including serving as Chair of the Judicial Screening Board (composed of multiple senior Navy and Marine Corps judge advocates who vote independently on nominees), and as Rules Counsel for complaints of judicial misconduct, none of those duties have, as yet, raised a conflict in the cases presently pending before this Court. However, as my participation over the past year in matters of judicial policy and management are manifest in specific cases in the future (if, in fact, any duty creates a conflict), and in the event I am designated as the Assis-

---

6. The Secretary has provided a hierarchy of regulatory structure, of which the RTMC is the bottom tier. RTMC 1–1 provides "This Regulation for trial by military commission (hereinafter Regulation) prescribes policies and provisions for administration for military commissions and implements the Manual for Military Commissions, United States, 2007 (M.M.C.).... In case of any conflict between this Regulation and the rules and procedures prescribed by the M.C.A. and M.M.C., the

latter two will always be controlling over this Regulation." *Id.* at ¶ 1–1a. Furthermore, "[t]his Regulation is not intended to, and does not, create any substantive right enforceable by any party." *Id.* at ¶ 1–1b. While it should not be disputed that a party has standing to contest a judge's statutory qualifications, there appears to be no such right to challenge the Secretary's action under the RTMC, particularly when such action is consistent with the superior MCA and MMC.

tant Judge Advocate General of the Navy later this year, there will be a more challenging landscape upon which to identify and avoid potential conflicts. Those *prospective* conflicts, however, are not present now, in the cases pending before this Court. Thus, in all aspects, the judicial independence of USCMCR judges, including this judge, has been assured.

### Recusal Considerations

It is not for me to determine the ultimate validity of my continued service on this Court. Rather, when subject to a challenge such as in the Motion to Disqualify, it is my responsibility to balance all of the factors bearing on recusal, and to ensure that my actions promote the public trust and ensure the greatest possible public confidence in this Court's independence, impartiality, integrity, and competence. Preamble ABA Model Code of Judicial Conduct 2007.

Even if the Court were to resolve the pending motion favorably to my continuing service on the Court, that would be less than acceptable to me. From a practical perspective, resolving this collateral issue will take a significant amount of the time and attention from the Court that could, and should, be spent in resolving the substantive and historic issues presented on appeal. Additionally, this collateral matter would then join the list of alleged errors advanced for further review, either in the regular course of appeal, or perhaps pursuant to an extraordinary writ. This would distract subsequent reviewing courts. While these practical impacts are worthy of consideration, by far the more weighty is the impact on the public perception of the integrity of the Court and its future judgment in this case. Though I am firmly convinced that my judicial qualifications have, at all times, met the statutory requirements, and that, in view of the action of the Deputy Secretary of Defense, there is no regulatory impediment to my continued service on the Court in these cases, the public perception of this new and unique intermediate appellate court is deserving of the utmost sensitivity.

In considering recusal, I have carefully considered the standards used by the federal courts in reviewing violations of the recusal statute (28 U.S.C. § 455) when there is no indication of actual bias. Among these, the promotion of public confidence in the integrity of the judicial process is an important public policy. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). That public policy can take on heightened importance under unique circumstances. For example, then Judge Andrew Effron (now Chief Judge of the Court of Appeals for the Armed Forces) was confronted at oral argument with the unique circumstance of a colleague judge seemingly raising an issue of Judge Effron's recusal. In exercising discretionary recusal, Judge Effron noted, "[w]hen the issue of recusal is interjected into the proceedings, a judge must decide whether he or she has become part of the problem, rather than part of the solution. The judge involved then must decide whether the circumstances warrant recusal as a matter of discretion, even if not required as a matter of law." *United States v. Gorski*, 48 M.J. 317, 324 (C.A.A.F.1997) (citations omitted).

The federal district judge presiding over sentencing in *United States v. Black*, 490 F.Supp.2d 630 (E.D.N.C.2007), also faced a unique circumstance elevating the concern for public confidence. The case involved the guilty plea of the former North Carolina Speaker of the House to charges related to soliciting and accepting cash from chiropractors, intending to reward them with connections with the business of state government. In this context, the defendant, Black, challenged the judge, asserting *inter alia* that the judge's prior role as a lawyer in a state redistricting matter showed a bias against Black's party affiliation. The judge found no merit in these or other assertions, and determined recusal was not required as a matter of law. The judge nevertheless recused as a

matter of discretion "to promote the public confidence in the administration of justice." *Id.* at 669. *See also United States v. Bobo*, 323 F.Supp.2d 1238, 1242–43 (N.D.Ala.2004) (judge, second cousin of current governor, presiding over high profile trial of former governor, recused in order to mitigate distrust of decisions of all branches of government viewed as "dangerous to our evolving experiment in self-governance through a representative democracy").

▮ In considering recusal, I am also mindful that, under military principles, including those applicable to military commissions, a judge should interpret and apply the grounds for recusal broadly, but should not recuse unnecessarily. R.M.C. 902(d)(1). Discussion. *See also United States v. McIlwain*, 66 M.J. 312, 314 (C.A.A.F.2008) (citing *United States v. Wright*, 52 M.J. 136, 141 (C.A.A.F.1999)). Though these principles apply most directly to situations of alleged bias at trial, they are nonetheless instructive regarding the invocation of discretionary recusal under other circumstances.

The military commission process by any measure is a unique circumstance meriting heightened consideration of the public confidence. I have exhaustively and carefully balanced my responsibility not to recuse unnecessarily, with the countervailing considerations. I have weighed heavily the public's perception of the pending case and of this Court, in the greater context of the military commission process. The disposition of this case, one of the first two military commission convictions to be reviewed on appeal, will chart historic precedent regarding the jurisdiction of military commissions, as well as potentially delineating for further review the breadth and reach of Constitutional protections in the framework of what has been referred to by some as "asymmetric warfare." Under these circumstances, and even assuming judgment in favor of my continuing on this Court, I am unwilling to permit the distraction of a collateral issue related to the legitimacy of one judge, and by extension, the legitimacy of the USCMCR, to intrude into the time and resources of this Court. I am equally unwilling to contribute to anything less than full public confidence in the integrity of the military commission process, and the legitimacy of this Court as it renders its first substantive rulings.

### Conclusion

For the foregoing reasons, and with the utmost confidence in the integrity, intellect, and industry of my colleagues, I recuse from consideration of the Appellant's Motion to Disqualify, and in the consideration of this case on appeal.

### Appendix A–B

A. Deputy Secretary of Defense Appointment of Captain Daniel E. O'Toole, JAGC, U.S. Navy, as Deputy Chief Judge of the Court of Military Commission Review, dated December 21, 2009 with TABs A and B

B. JAG Notice 5450, Mission and Function of Assistant Judge Advocate General, Chief Judge of Department of the Navy, dated May 24, 2010

### Appendix A

**ACTION MEMO**

December 17, 2009

FOR: Robert Rangel, DEPUTY SECRETARY OF DEFENSE,

FROM: Jeh C. Johnson, General Counsel

SUBJECT: Appointment of Captain Daniel E. O'Toole, JAGC, U.S. Navy, as Deputy Chief Judge of the Court of Military Commission Review (CMCR)

• Judge Frank J. Williams provided notice of his intent to resign as Chief Judge of the CMCR on a date to he determined in order to facilitate the Presidential nomination and Senate confirmation of new civilian judges to the Court in accordance with the Military Commissions Act of 2009 ("MCA") § 950f(b)(3). (TAB A) Moreover, the Deputy Chief Judge of the CMCR, Colonel David R. Francis, USAF, is scheduled to retire on December 31, 2009.

• In order to ensure CMCR continuity of operations during this transition period, I recommend that Captain Daniel E. O'Toole, JAGC, U.S. Navy, he appointed as the Deputy Chief Judge of the CMCR effective December 31, 2009. As the Deputy Chief Judge, Captain O'Toole will be able to exercise all of the authority vested in the Chief Judge in the event of a vacancy in the position between the resignation of Chief Judge Williams and the confirmation of his successor.

• Captain O'Toole is already serving as a Judge on the CMCR and his biography is attached at TAB B. Chief Judge Williams and the Judge Advocate General of the Navy concur with this recommendation.

RECOMMENDATION: That the Deputy Secretary of Defense approve the appointment of Captain O'Toole to be the Deputy Chief Judge of the CMCR effective December 31, 2009.

Approve _____ Disapprove _____
Other _____

DEC 21 2009

COORDINATION:

Judge Advocate General of the Navy

Attachments:

As stated

**TAB A**

December 2, 2009

MEMORANDUM FOR SECRETARY OF DEFENSE

SUBJECT: Request for Appointment of Deputy Chief Judge

On April 28, 2008, the Deputy Secretary of Defense appointed Colonel David R. Francis, U.S. Air Force, as Deputy Chief Judge for the U.S. Court of Military Commission Review. Deputy Chief Judge Francis will retire from the Air Force on December 31, 2009. I recommend that Captain Daniel E. O'Toole, U.S. Navy, be appointed to replace Colonel Francis. The Navy Judge Advocate General concurs with my recommendation.

On May 8, 2007, the Deputy Secretary of Defense appointed Captain O'Toole to be an appellate judge on the U.S. Court of Military Commission Review. In April 2008, Captain O'Toole became the Chief Judge, Navy–Marine Corps Court of Crim-

inal Appeals. In July 2009, the Secretary of the Navy approved the selection of Captain O'Toole to serve as the first Assistant Judge Advocate General (Chief Judge) of the Department of the Navy.

I intend to resign from my position to enable the President to exercise his authority to appoint civilian judges to the Court. Deputy Chief Judge Francis will become Acting Chief Judge, and his duties will include assignment of judges to panels and assignment of pending cases to panels for decision. It is essential that a replacement Deputy Chief Judge be designated before December 31, 2009, so that he can serve as Acting Chief Judge until a new Chief Judge is appointed.

/s/ Frank J. Williams

Frank J. Williams

Chief Judge.

CF:

General Counsel, Department of Defense

Enclosure

Captain O'Toole's Biography

### TAB B

### Captain Daniel E. O'Toole, JAGC, U.S. Navy

Captain Daniel E. O'Toole, Judge Advocate General's Corps, U.S. Navy, graduated from High Point College in 1977 with a Bachelor of Arts degree, with honors. He holds a Juris Doctor degree from Wake Forest University School of Law and a Master of Laws (Environmental Law) degree from The George Washington University National Law Center. Captain O'Toole has been a member of the North Carolina State Bar since 1980.

Captain O'Toole's experience includes four years in the private practice of law, litigating cases in state and federal courts, including appellate practice. In 1984, he accepted a direct commission into the Navy JAG Corps. Since then, he has served in multiple positions in Naval Legal Service Command, as a prosecutor, defense counsel, and as both the Executive Officer and the interim Commanding Officer of Trial Service Office East. He also twice served in the General Litigation Division, Office of the Judge Advocate General (OJAG), including as its Deputy Director, and Director, and he served three years as a Chief Circuit Military Judge. During service on the trial bench, Captain O'Toole was the Navy's designated National Security Judge. He has prosecuted, defended or presided over a wide range of cases, including fraud, rape, murder, including capital murder, and national security cases. In addition, Captain O'Toole served as Presiding Officer over Military Commissions in Guantanamo Bay, Cuba. Captain O'Toole is designated a Litigation Expert in the Navy JAG Corps' Military Justice Litigation Career Track.

In addition to 15 years of active litigation, Captain O'Toole served as SJA on USS THEODORE ROOSEVELT during Desert Shield/Desert Storm, and served as SJA, Commander Carrier Group EIGHT, embarked on USS JOHN F. KENNEDY and USS DWIGHT D. EISENHOWER. He also served as an SJA ashore at Naval Air Station, Brunswick, Maine, on the staff of Navy Region Norfolk, and both the Naval Air Forces Atlantic and U.S. Atlantic Fleet staffs. He has also served as Director of OJAG Management and Plans, as Navy JAG Corps Community Manager, and Executive Assistant and Special Counsel to the Navy General Counsel.

In 2007, Captain O'Toole was elevated from the trial bench to the Navy–Marine Corps Court of Criminal Appeals, and was simultaneously appointed to the Court of Military Commission Review (CMCR). In April 2008, Captain O'Toole was invested as the Chief Judge, Navy–Marine Corps Court of Criminal Appeals. In July 2009,

the Secretary of the Navy approved the report of the selection board that recommended Captain O'Toole serve as the first Assistant Judge Advocate General (Chief Judge) of the Department of the Navy. He assumed duties as Chief Judge in September 2009, and upon detailing as the Assistant Judge Advocate General in his third year of service, he will qualify for retirement at the rank of Rear Admiral (Lower Half), as determined by the Secretary. Captain O'Toole remains a Presiding Judge on the CMCR.

Captain O'Toole is a 1984 honors graduate of the Naval Justice School. He is also The Distinguished Graduate of the 47th Military Judge's Course, and was awarded the 2008 Major General William K. Suter Distinguished Judicial Services Award. His personal military decorations include the Legion of Merit (four awards), the Meritorious Service Medal (four awards), the Navy Commendation Medal (three awards), the Joint Services Achievement Medal, and the Navy–Marine Corps Achievement Medal (two awards).

**Appendix**

**B**

JAGNOTE 5450

Subj: MISSION AND FUNCTION OF ASSISTANT JUDGE ADVOCATE GENERAL, CHIEF JUDGE OF DEPARTMENT OF THE NAVY

Ref: (a) 10 U.S.C. Sec. 5149

(b) JAG memo of 18 Dec 07

(c) JAG ltr 5817 Ser 00/0123 of 1 Sep 09

(d) JAGINST 5400.1A

(e) JAGINST 5814.1

(f) JAGINST 5803.1C

(g) JAGINST 5817.1C

(h) JAGINST 1150.2

(i) COMNAVLEGSVCCOMINST 5530.28

(j) JAGINST 5813.4G

1. *Purpose.* Pursuant to references (a) through (c), and pending revision of affected references (d) through (j), this Notice promulgates policy, prescribes procedures and assigns responsibilities for the position of Chief Judge of the Department of the Navy, and when so designated, as Assistant Judge Advocate General (AJAG–CJ).

2. *Background.* On 18 December 2007 the Secretary of the Navy established the AJAG–CJ whose principal duties include supervision and management of the trial and appellate judiciary enterprises within the Department of the Navy.

3. *Primary Duties.* The AJAG–CJ oversees the Department of the Navy judicial enterprise, including the following duties and responsibilities:

a. *Judicial Supervision*

(1) AJAG–CJ is the senior supervisory jurist in the Department of the Navy, and shall comply with the 2007 American Bar Association Code of Judicial Conduct (Code of Judicial Conduct). Consistent therewith, the AJAG–CJ will monitor the timeliness and productivity of the trial and appellate judiciaries and adjust, provide, or request resources needed to maintain fair, impartial, and timely disposition of courts-martial by the trial and appellate judiciaries. Additionally, the AJAG–CJ will take such administrative action consistent with the Code of Judicial Conduct and other governing regulations as are necessary to ensure all judges perform their duties timely and effectively.

(2) The AJAG–CJ is the reporting senior for the Chief Judge of the Trial Judiciary (TRIJUDACT), the Chief Judge of the Navy–Marine Corps Court of Criminal Appeals (NMCCA) and all other judges of the NMCCA, active and reserve components. Whenever the AJAG–CJ evaluates a judge from a different Service, the AJAG–CJ will forward that fitness report for administrative review to the Judge Advocate General or to the Staff Judge Advocate to the Commandant of the Marine Corps, as appropriate.

(3) The AJAG–CJ shall conduct any second-level review required by governing fitness report instructions for judges evaluated by the Chief Judge TRIJUDACT.

(4) The AJAG–CJ is the higher level reviewer for the Clerk of Court, NMCCA, and any other civilian rated by either Chief Judge NMCCA or Chief Judge TRIJUDACT.

(5) In the event the AJAG–CJ develops a conflict of interest in the evaluation of any subordinate, the Judge Advocate General will be the reporting senior.

(6) Reports to the Judge Advocate General required by references (d) through (j) shall be made to the AJAG–CJ. The AJAG–CJ shall report at least quarterly to the Judge Advocate General regarding the status of courts-martial pending with military trial judges for authentication, or docketed by the NMCCA, with specific comment on any administrative impediment, such as a lack of judicial resources, which might cause any case to fail to be processed within the standards set forth in *United States v. Moreno*, 63 M.J. 129 (C.A.A.F.2006). In addition, the AJAG–CJ will report the status and administrative needs or other judicial resource shortfall of any case docketed at NMCCA for longer than one year, in panel for longer than six months, or in which corrective or other action has been directed by NMCCA, when such action has not been completed by the date specified.

(7) The AJAG–CJ will ensure there are rules of practice and procedure, including internal operating procedures, for the trial and appellate judiciaries that will provide timely and efficient trial and post-trial processing of courts-martial, consistent with applicable law, and in the interests of justice. Rules promulgated by the chief judges of the TRIJUDACT and NMCCA shall be provided to the Judge Advocate General via the AJAG–CJ.

b. *Judicial Misconduct.* The AJAG–CJ is designated Rules Counsel for all inquiries into judicial misconduct involving judges of the NMCCA and TRIJUDACT. All complaints of judicial misconduct or unfitness will be submitted to the AJAG–CJ. In the case of complaints against a Marine Corps judge, the AJAG–CJ will notify the Staff Judge Advocate to the Commandant of the Marine Corps in addition to notifying the Judge Advocate General. The AJAG–CJ will appoint any necessary preliminary inquiry officer or ethics investigating officer from among current or former judges belonging to the Service of the judge to be investigated, unless impractical to do so. The Deputy Chief Judge, TRIJUDACT, is designated to respond to inquiries regarding matters of judicial ethics.

c. *Judicial Screening.* The AJAG–CJ is the Chair of the Judicial Screening Board. The AJAG–CJ is responsible for scheduling and conducting periodic boards to select the best qualified candidates for future judicial service.

d. *Judicial Training.* The AJAG–CJ is responsible for the initial training of all judicial candidates, as well as the continuing education of current TRIJUDACT and NMCCA judges. The AJAG–CJ will prescribe the minimum training standards for all judges, requirements for continuing le-

gal education for judges, and represent the Navy–Marine Corps judiciaries at the flag and general officer level regarding matters of judicial training and qualifications, when those policy decisions are coordinated with the other Services. In discharging these responsibilities, the AJAG–CJ will coordinate with other Service chief judges to create and maintain a standard military judges training symposium that incorporates the courses of the National Judicial College, and other similar programs, improving the profile of the military judiciary by providing a cost-effective means of post-graduate and continuing education specifically oriented towards the judiciary.

e. *Judicial Assignments.* The AJAG–CJ shall make recommendations to the Judge Advocate General and the Staff Judge Advocate to the Commandant of the Marine Corps on billet structure, including the number and geographic location of judiciary billets. The AJAG–CJ is also the Judge Advocate General's principal advisor on the assignment of officers to positions within the trial and appellate judiciaries, active and reserve components, including officers to be nominated for duty under the Department of Defense as military commission trial or appellate judges. The AJAG–CJ will coordinate closely with the Staff Judge Advocate to the Commandant of the Marine Corps regarding the nomination and appointment of Marine Corps judges. Once active and reserve judges are appointed, the AJAG–CJ is responsible for supervising their utilization, and that of all judicial resources, to best serve the interests of justice within the Department of the Navy.

f. *Judicial Representative.* The AJAG–CJ is the principal advisor to the Judge Advocate General regarding the Article 146, UCMJ, Code Committee, on matters affecting the judiciary, and will represent the Judge Advocate General on the Code Committee when so designated.

g. *Community Sponsor.* When the AJAG–CJ is a Navy judge advocate, the AJAG–CJ serves in the capstone billet of the military justice litigation career track for judge advocates of the Navy. As such, the AJAG–CJ is the principal strategic planner and community sponsor for the military justice litigation career track. The AJAG–CJ will affirmatively lead that community by overseeing execution of reference (h) by which the Navy JAG Corps will identify, develop, and retain litigators and judges. In overseeing execution of reference (h), the AJAG–CJ will coordinate with, and be supported by, the other AJAGs.

h. *Judicial Process Improvement.* The AJAG–CJ is responsible for the continuous monitoring and assessment of judicial quality and efficiency, including methods of decreasing error rates and the cost of providing judicial services in the military justice process. In carrying out these responsibilities, the AJAG–CJ will coordinate with other Service chief judges, as well as the civilian judiciary, to identify and implement best judicial practices, including in such areas as standardization of judicial forms and court filings, efficient and effective case management and tracking systems, and other advances in courtroom technology and judicial practice. To the extent advances in judicial practice and procedure necessarily implicate changes in court-martial practice, such as changes in the trial script or pretrial agreement format, development of cutting-edge technology, including electronic records of trial, or other trial practices, the AJAG–CJ will coordinate with the other AJAGs and make recommendations to the Judge Advocate General and the Staff Judge Advocate to the Commandant of the Marine Corps.

[redacted] 

i. *Judiciary and Courtroom Security.* The AJAG–CJ shall advise the Judge Advocate General, Commander, Naval Legal Service Command, and the Staff Judge Advocate to the Commandant of the Marine Corps, regarding judiciary and courtroom security. In this capacity, the AJAG–CJ shall monitor and report on the status of courtroom and judicial security, develop guidelines and best practices, and coordinate their implementation.

j. *Succession.* The AJAG–CJ shall serve in succession as the Judge Advocate General of the Navy when so directed by the Secretary of the Navy, the Judge Advocate General, or their designees, and as set forth in governing regulations.

k. *Other Duties.* The AJAG–CJ shall discharge such other duties as assigned by the Judge Advocate General, consistent with the Code of Judicial Conduct and judicial independence. Other duties may include, but are not limited to, serving as a member of the United States Court of Military Commission Review, a member of the Naval Justice School Board of Advisors, a member of the Office of the Judge Advocate General Awards Board, and as a member or manager of civilian personnel management and pay committees. Additionally, the AJAG–CJ is authorized to detail himself or herself to preside over any general court-martial or military commission upon the request of the Department of Defense, the Chief Judge TRIJUDACT, or any other Service Judge Advocate General or designee pursuant to the Inter–Service Memorandum of Understanding on cross-service detailing of military judges. The Navy Judge Advocate General shall be notified of the circumstances attending the detailing of the AJAG–CJ to any court-martial, and the impact such detailing will have on the discharge of the AJAG–CJ's other duties. The AJAG–CJ will serve simultaneously as the Chief Judge NMCCA only when so appointed by the Judge Advocate General.

4. *Cancellation Contingency.* This Notice shall be effective on 1 June 2010, and shall be retained until incorporated into revisions of references (c) through (j).

/s/ JAMES HOUCK
JAMES HOUCK

Distribution:

Electronic only, via OJAG website http://www.jag.navy.mil and the Department of the Navy website, http://doni.daps.dla.mil.